[No. A035108. First Dist., Div. Four. June 16, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
SANDRA JO HOBBS, Defendant and Appellant.

**COUNSEL**

Mervin C. Lernhart, Jr., and Stephen R. Gianelli for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Dane R. Gillette and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHANNELL, J.**—Following the denial of her motion to suppress evidence, appellant Sandra Jo Hobbs entered a plea of guilty to one count of possession of methamphetamine for sale. (Health & Saf. Code, § 11378, subd. (a).) She was sentenced to three years in state prison. A timely notice of appeal was filed. (Pen. Code, § 1538.5, subd. (m).)

Appellant contends that the trial court erred in rejecting her claim that the arresting officers had failed to comply with the knock-notice requirements of Penal Code section 1531.[1] The precise issue is whether, in the circumstances of this case, appellant's action or inaction for five seconds after the officers had knocked and announced their authority and purpose constitutes a refusal of admittance within the meaning of section 1531 so as to justify their entry through the screen door to her home. Although this is a close case, we conclude that under applicable standards of appellate review, the trial court's implied findings are supported by substantial evidence. Measuring those facts against the constitutional standard of reasonableness, we affirm the decision of the court below.

### I.  FACTS

#### A.  *Introduction*

Preliminarily, we set forth the standard of review applicable at the time this case was heard in the trial court and which controls this case on appeal. In *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], the Supreme Court discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps.[2]

In the first step, the trial court must "find the facts" relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute as it read at the time of the hearing below vested the superior court with the power to decide them.

---

[1] Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

All further statutory references are to the Penal Code.

[2] We emphasize that in this case, we do not sit in review of the findings of the magistrate. Although he also upheld the entry by the law enforcement officers, his findings were superseded by the de novo determination of the superior court. Our task is to review the ruling of the superior court, under appropriate standards of review. (See *People* v. *Lawler, supra,* at p. 160.)

(*People* v. *Leyba* (1981) 29 Cal.3d 591, 596 [174 Cal.Rptr. 867, 629 P.2d 961]; § 1538.5, subd. (i).)[3] For the purpose of finding those facts, the superior court sits with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences. " 'On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People* v. *Leyba, supra,* 29 Cal.3d at pp. 596-597.)

During the second step of the process, the trial court has the additional duty of deciding whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Because that issue is a question of law, the appellate court is not bound by the substantial evidence standard when reviewing the trial court's decision. In such review, it is the ultimate responsibility of the appellate court to measure the facts, as found by the trier of fact, against the standard of reasonableness. (See *People* v. *Leyba, supra,* 29 Cal.3d at p. 597.)

With those general principles in mind, we review the evidence.

B. *The May 16, 1985, Search*

On May 16, 1985, at approximately 6:45 p.m., officers from the Napa County narcotics task force executed a search warrant at 1047 Kansas Avenue, Napa. As Sheriff's Deputy Steven Potter and Police Officer Terry Gonsalves approached the front door, Gonsalves could see through a window that appellant was standing in the kitchen with a young boy and girl. The officers wore raid jackets with a badge and shoulder patches and law enforcement green baseball caps. Deputy Potter observed that the solid door to the residence was open, but a screen door was closed.

Deputy Potter knocked on the screen door. Officer Gonsalves testified that in response to the knock, appellant stopped what she was doing in the kitchen and looked. Gonsalves waved at her. Appellant then walked around to the entry hallway where she stopped approximately eight to twelve feet away from the officers waiting at the screen door. She asked them what they wanted. Approximately five to ten seconds had elapsed between the initial knock and appellant's appearance. She was wearing blue jeans and a pullover shirt, and her hands were empty and at her sides.

Deputy Potter then gave notice of his authority and purpose, stating that he was Steve Potter from the sheriff's department and that he had a search

---

[3] Subdivision (i) of section 1538.5 was amended effective January 1, 1987. As this case was heard before that date, the amended statute has no applicability to this case.

warrant for the residence. Appellant stood there and looked at the officers. Officer Gonsalves testified that from the time that Potter announced his presence and identified himself as a police officer until the time they entered "was right at about five seconds."[4] After entering, the officers conducted a search of the premises, during which a substantial amount of contraband items were recovered.

## II.   DISCUSSION

### A.   *Inevitable Discovery*

In denying appellant's motion to suppress, it appears that the trial court relied at least in part on the so-called "inevitable discovery rule." At one point, the trial court asked defense counsel: "When you've got the officers at the door with a warrant and an occupant on her way to the door, knowing that the occupant doesn't have the authority not to permit the officers to enter, the question arises so what?" Appellant argues that the application of the inevitable discovery doctrine in this context could amount to a complete abrogation of the knock-notice requirements set out in section 1531.

Whatever merit there may be to that argument, we need not decide that in this case. ■ Under traditional principles of appellate review, if the action of the trial court in denying the motion to suppress was right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion. A correct decision of the trial court must be affirmed on appeal even if it is based on erroneous reasons. (*People* v. *Braeseke* (1979) 25 Cal.3d 691, 700 [159 Cal.Rptr. 684, 602 P.2d 384]; Witkin, Cal. Criminal Procedure, Appeal, § 682, pp. 665-666; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.) We therefore look to see if any other theory supports the trial court's decision.

### B.   *Implied Refusal to Admit*

Appellant argues that the trial court erred as a matter of law when it stated there was not a violation of knock-notice requirements in this case.

---

[4]Officer Potter testified the time between his announcement and his opening of the door was "approximately a second." The magistrate, in his findings, referred to "a one second lag." As noted earlier, however, that determination was superseded by the de novo determination of the superior court. As the latter court is empowered to resolve conflicts in the testimony (*People* v. *Lawler, supra,* 9 Cal.3d at p. 160), and as this court must view the evidence in a light most favorable to support the judgment below (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), we must presume the superior court found "about five seconds" to be the operative time period.

She premises this argument on the factual assumption that the officers waited only one second after making their announcement before entering the house. But as previously noted (see fn. 1, *ante*), the controlling evidence at this level indicates that "about five seconds" occurred between the completion of Deputy Potter's announcement of his authority and purpose and the officers' entry through the screen door of appellant's home. The issue therefore narrows to whether appellant can be said to have "refused admittance" during the period she was standing in the hallway looking at the officers during that time period.

■ In *Jeter* v. *Superior Court* (1983) 138 Cal.App.3d 934, 937 [188 Cal.Rptr. 351], we held that: "Even where the police duly announce their identity and purpose, forcible entry is not permitted under the statute if the occupants of the premises are not first given an opportunity to surrender the premises voluntarily." Implied refusal exists where there is an unreasonable delay in responding to the officers' announcement under the circumstances of the case. (*People* v. *Neer* (1986) 177 Cal.App.3d 991, 996 [223 Cal.Rptr. 555].) There is no convenient test for measuring the length of time necessary for an implied refusal. (*Ibid.*)

Cases cited by appellant involved circumstances distinguishable from those in this case. In *Garcia* v. *Superior Court* (1973) 29 Cal.App.3d 977, 979, 981 [106 Cal.Rptr. 98], the officers "rushed into" the apartment as soon as the occupant opened the door. In *Jeter,* where the officers entered through what was apparently a solid door, we held a delay of "five or ten seconds" was insufficient as "the officers had no information whatsoever upon which to base a belief that they were being refused entry." (*Jeter* v. *Superior Court, supra,* 138 Cal.App.3d at p. 937.) In *Jeter* we distinguished earlier cases in which the police "had first-hand concrete knowledge that someone was in the residence and awake ...." (*Ibid.*) In *People* v. *Gallo* (1981) 127 Cal.App.3d 828, 839 [179 Cal.Rptr. 662], for example, the officer " 'not only knew someone was in the house but could see them, and was clearly visible to them through the screen door.' " (*Jeter* v. *Superior Court, supra,* at p. 937.)

The few "screen door" cases in which a short length of time has been held unreasonable are also distinguishable from this case. In *People* v. *Abdon* (1972) 30 Cal.App.3d 972 [106 Cal.Rptr. 879], a five- to ten-second wait between announcement and entry was held insufficient because the officers could see the occupant inside the house on a couch "in the process of waking up." The *Abdon* court said "there was no refusal of admittance, or action or inaction which could reasonably be understood by the officers to indicate a refusal, prior to the almost instantaneous entry of the officers." (*Id.,* at pp. 977-978.)

In the recent case of *People* v. *Neer, supra,* 177 Cal.App.3d 991, the court underscored the facts that there was *no evidence* of the amount of time that elapsed between two announcements, and the officers opened the screen door *immediately* after making their announcement. (*Id.,* at p. 996.)

■ In this case, on the other hand, the officers could see appellant through the kitchen window as they approached the house. When Deputy Potter first knocked on the screen door, appellant stopped what she was doing and looked. One of the officers waved at her. When she came around to the hallway and asked the officers what they wanted, Potter replied by identifying himself and stating he was there with a search warrant for the residence. Instead of responding in any direct way, appellant simply stood there and looked at the officers for "about five seconds." We believe that under the circumstances, appellant had ample opportunity within which to surrender her premises voluntarily. We conclude that the officers were justified in unlatching the door and entering the home to execute the warrant.

Our conclusion is not inconsistent with the purposes sought to be served by the statute. In *People* v. *Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187], the Supreme Court found there was substantial compliance with section 1531 where an officer, in somewhat similar circumstances, first opened a screen door, identified himself and, after stating he had a warrant for a search of the premises, entered. (*Id.,* at p. 721.)

The question posed by the Supreme Court in *Peterson* was whether the officer, by delaying his announcement until after he had opened the screen door, had frustrated or made nugatory any of the purposes and policies of section 1531. In language equally applicable to our case, the Supreme Court in *Peterson* reasoned that "the interior of the residence and the occupants therein were visible to any member of the public who, like the officers, had proper reason to enter onto the premises and approach the visibly open doorway. Thus, no right of privacy was infringed as the opening of the screen door revealed nothing more than was already exposed to the officers' view and they did not physically intrude into the home until after the announcement." (*People* v. *Peterson, supra,* 9 Cal.3d at p. 723.)

The Supreme Court continued: "It is equally clear that no greater risk of violence to any person on the premises was created, as at all times after approaching and knocking the officers could clearly observe the occupants within the interior and take precautionary measures if necessary. Nor can it be argued successfully that there was a greater risk that the occupants might respond violently by reason of ignorance of the officers' identity and purpose, as the officers were immediately visible and announced their pur-

pose to the occupants who were thus made aware of the situation and its demands. Assuredly the personal safety of the officers, as in the case of the occupants, was not subjected to any increased danger. [Fn. omitted.]" (*People* v. *Peterson, supra,* 9 Cal.3d at pp. 723-724.)[5]

The trial court did not err in denying appellant's motion to suppress.

The judgment is affirmed.

Anderson, P. J., and Sabraw, J., concurred.

On July 16, 1987, the opinion was modified to read as printed above.

---

[5] In the trial court, the prosecutor's argument was consistent with our conclusions herein.