[No. F010835. Fifth Dist. June 23, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MARGARET GONZALEZ, Defendant and Appellant.

1044

COUNSEL

David R. Mugridge, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gary A. Binkerd and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEST, Acting P. J.**—Defendant contends the manner of execution of a search warrant at her home was unreasonable. We agree and reverse the conviction that was based on evidence seized during the search.

FACTS

Riverbank police officers obtained a search warrant for defendant's home based on information that she was selling drugs from the home. The warrant permitted nighttime execution.

On August 26, 1987, at 12:50 o'clock in the morning, officers served the warrant. They thought that defendant lived with her two small children and that no one else lived in the house; they were not sure who else might be in the house, since there was a lot of traffic in and out, but they did not believe anyone else was there.

The search team consisted of six officers. The lead officer, Wend, was dressed in a black sleeveless T-shirt and camouflage trousers or blue jeans. He had a pistol holstered at his waist and his badge was hanging from his T-shirt pocket. Wend stood immediately in front of Gonzalez's door. Two other officers in street clothes stood behind him. The only officer in uniform stood to Wend's right, away from the door but in front of a curtained window. Two other plainclothes officers took up positions near other exterior doors at the side and rear of the house.

Wend knocked on the front door. He noticed it was a solid door with no windows, and that the doorknob mechanism was entirely missing. As he knocked on the door he felt that it was secure—the bullet bolt was still in place but the knob to operate the bolt was missing.

After Wend knocked, the uniformed officer (who did not testify at the preliminary hearing) told Wend that "someone" was coming. A woman's voice from just behind the door then asked, "Who is it?" Wend said, "Riverbank Police Department. Search warrant." Wend heard nothing further, and after five seconds he kicked in the door. It hit defendant in the shoulder and knocked her to the ground.

Defendant testified that after she asked who was at the door and Wend answered, she said "just a minute" and bent over to look out the doorknob hole. She saw a man in camouflage pants standing at the door. She thought it was her cousin; she was standing up to operate the locking mechanism with her finger when the door came flying open and knocked her to the floor.

The search team held defendant and her two young daughters in the living room and searched the house. They found .02 grams of cocaine in defendant's bedroom.

Defendant was charged with possession of cocaine, a violation of Health and Safety Code section 11350. She moved to suppress the cocaine on the basis that the officers executing the search warrant had violated Penal Code section 1531.[1] The motion was submitted on the preliminary hearing transcript and was denied. The superior court determined that under all of the circumstances defendant's inaction during the five-second interval after Wend said "search warrant" constituted an implied refusal of entry, permitting a forcible entry. Defendant then pleaded guilty and was placed on probation.

### DISCUSSION

Section 1531 provides as follows: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." ■ Thus the statute requires that two conditions be satisfied before forcible entry is permitted: (1) the officer must announce his authority and purpose, and (2) he must be refused entry. The refusal of entry may be implied, as where an occupant fails within a reasonable time to respond to a police demand that he open the door. (See, e.g., *People* v. *Hobbs* (1987) 192 Cal.App.3d 959, 964 [237 Cal.Rptr. 742].)

■ Section 1531 codifies the ancient "rule of announcement" set forth in early English common law. (See *People* v. *Bradley* (1969) 1 Cal.3d 80, 86

---

[1] All further statutory references are to the Penal Code.

[81 Cal.Rptr. 457, 460 P.2d 129];.*People* v. *Peterson* (1973) 9 Cal.3d 717, 722, fn. 7 [108 Cal.Rptr. 835, 511 P.2d 1187].) Announcement and demand for entry at the time of service of a search warrant are part of Fourth Amendment reasonableness. Failure to comply with the statutory codification of this requirement makes a search unreasonable under the Fourth Amendment unless one of two exceptions excuses compliance. (*People* v. *Jacobs* (1987) 43 Cal.3d 472, 484 [233 Cal.Rptr. 323, 729 P.2d 757]; *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 325 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Neer* (1986) 177 Cal.App.3d 991, 998-999 [223 Cal.Rptr. 555].)

▮ The two exceptions to the requirement for compliance with section 1531 are generally called "exigent circumstances" and "useless gesture." If the unfolding events at the time of execution of the warrant give the officers a reasonable basis to conclude that evidence will be destroyed or lives will be endangered by delay, strict compliance with the statute is not required. (See *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706]; see generally 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (2d ed. 1987) § 4.8(d), (e), at pp. 280-286.) Similarly, if events indicate that compliance with the statutory requirements would be a useless gesture (as where police have announced their purpose through a screen door and visible occupants of the residence stare blankly instead of responding to the officers), the requirement that the officers wait for a refusal of permission to enter is excused. (See *People* v. *Tacy* (1987) 195 Cal.App.3d 1402, 1418 [241 Cal.Rptr. 400]; *People* v. *Uhler* (1989) 208 Cal.App.3d 766, 769 [256 Cal.Rptr. 336].)

Despite its ancient lineage, notice and refusal of entry requirements have come under criticism. According to critics, the requirements foster the very dangers they are supposed to reduce. (See, e.g., *People* v. *Tacy, supra,* 195 Cal.App.3d at pp. 1420-1421, quoting federal cases.) Thus, although one purpose of the requirement is to prevent startled occupants from using violence against unannounced intruders (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 321), the delay caused by the statute might give a forewarned occupant exactly the opportunity necessary to arm himself, causing injury to officers and bystanders. (*People* v. *Tacy, supra,* 195 Cal.App.3d at pp. 1420-1421, quoting *United States* v. *Bustamente-Gamez* (9th Cir. 1973) 488 F.2d 4, 11.) While another purpose is to protect the privacy of persons by permitting them a few moments to prepare for official entry into their homes (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 321), execution of a search warrant is based on the reduced expectation of privacy that arises from a magistrate's determination of probable cause to believe that evidence of criminal activity will be found in the dwelling. Since one has no right to deny entry to the holder of a search warrant in any event, critics ask, what

public policy requires that entry be delayed while police engage in meaningless formalities? (See *People* v. *Tacy, supra,* 195 Cal.App.3d at p. 1421.)

These criticisms are particularly pressing in the context of narcotics cases. In these cases evidence is readily destroyed. Drug dealers are often well organized, sophisticated and armed. Thus as long ago as 1969 the Attorney General urged the Supreme Court to excuse compliance with section 1531 in narcotics raids because of the nature of the crime and the nature of the criminals. The court rejected that request and continued to require announcement and refusal of entry unless the particular facts known to the officers established exigent circumstances (*People* v. *Gastelo, supra,* 67 Cal.2d at p. 588) or established that rigid compliance would be a useless gesture. (*People* v. *Peterson, supra,* 9 Cal.3d at pp. 723-724.)

Other courts have rejected similar criticisms of notice and refusal of entry requirements. (See, e.g., *State* v. *Valentine* (1972) 264 Ore. 54 [504 P.2d 84]; *State* v. *Carufel* (1974) 112 R.I. 664 [314 A.2d 144].) Despite the criticisms of the rule, the California Supreme Court continues to hold that notice and refusal of entry requirements are part of Fourth Amendment reasonableness. (*People* v. *Jacobs, supra,* 43 Cal.3d at p. 484.)

We have engaged in this somewhat extended review of the relevant law because the present case is an excellent example of the conflicting policies that are at work in this area. On the inside of the door is a lone woman with two daughters; she lives in an increasingly violent society and she must decide at 12:50 a.m. whether to throw her door open to a band of armed men who claim to be police but who are standing on her front porch in scruffy street clothes. (See, e.g., *People* v. *Silva* (1988) 45 Cal.3d 604, 615 [247 Cal.Rptr. 573, 754 P.2d 1070] [defendant used Highway Patrol-type spotlight to cause victims to stop].)

On the other side of the door stand officers who have no doubts about their authority and purpose—they know they are not rapists or killers, and that they are not common thugs despite their dress and the late hour of their arrival. They believe they have a drug dealer cornered inside, and they know there is someone behind the door who could let them in but who has not done so. They know nothing else about what is happening in the house, but they know that almost anything that is happening behind the closed door is likely to result in injury to them or destruction of evidence.

The interests at stake on both sides of the door are quite important; and as the history of the notice and refusal of entry requirement makes clear the interests are not easily reconciled.

■ In undertaking to resolve this matter we evaluate the facts based on the express and implied findings of the magistrate, since the suppression motion was submitted to the superior court on the preliminary hearing transcript. (*People* v. *Ramsey* (1988) 203 Cal.App.3d 671, 679 [250 Cal.Rptr. 309].) We draw all presumptions in favor of the magistrate's findings, and uphold express and implied findings if they are supported by substantial evidence. (*Ibid.*)

■ The magistrate determined that exigent circumstances excused full compliance with section 1531. We think the factors relied upon by the magistrate in making that determination conflict with *People* v. *Gastelo, supra,* 67 Cal.2d at pages 588-589. Measured by the *Gastelo* standard, exigent circumstances did not exist.

Officer Wend testified that he heard nothing and saw nothing that caused him to believe exigent circumstances existed. However, Wend testified that he believed that the occupants might be destroying evidence or arming themselves because he could not hear anything going on behind the closed door. He acknowledged that this same possibility exists "every time you go to serve a search warrant."

The magistrate determined that the *absence* of any noise or other sign of activity, in the context of a late night search of a drug dealer's residence and in the context of the officers' knowledge that someone was home and had heard the knock, "created the possibility of exigent circumstances, such as, arming one's self or getting rid of the drugs or whatever else might be in there. [¶] We have specific things that in my mind created the necessity of kicking in the door."

The speculative reasoning relied on by Officer Wend and the magistrate was quite similar to that rejected by the Supreme Court in *Gastelo*. (See 67 Cal.2d at pp. 588-589.) In the absence of some specific and articulable reasons that set the present search apart from other narcotics searches, the mere *possibility* that occupants were trying to frustrate the search does not excuse compliance with section 1531. "Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen." (*Id.* at p. 589.) If specific indications of arming or destruction of evidence were not required, the exigent-circumstances exception would entirely consume the notice and refusal requirement. (*Id.* at p. 588.)

On appeal the Attorney General argues the exigent-circumstances exception only in passing. ■ His main argument is that the officers fully complied with section 1531. He says Wend knocked and announced his

authority and purpose, and defendant's inactivity for five seconds was an implied refusal of admittance. Accordingly forcible entry was permitted.

We first note that the magistrate did not find there had been an implied refusal of admittance, but rather that exigent-circumstances excused the officers from waiting for refusal of entry. If anything, the exigent circumstances finding implies a finding that the officers did not fully comply with the statute—exigent circumstances are necessary only to excuse non-compliance. Respondent's attempt to rely upon the limited reviewability of an implied finding of full compliance (see *People* v. *Ramsey, supra,* 203 Cal.App.3d at p. 679) is therefore misplaced.

Further, such a finding would not be supported by substantial evidence even if the magistrate had made the finding. First, Wend noticed that the doorknob hole was the only way to see out the door, but he stationed himself and his plainclothes men in front of the door. Second, Wend and the uniformed officer knew the occupant of the house had not looked out the window to see the uniformed officer.[2] Yet Wend did not tell her to do so even though he knew that looking out the window was the only way to see a uniformed officer. Third, Wend knew that a bullet bolt secured the door and that the knobs were missing. A reasonable person would have known that, however one opened the door, it was more complicated than just turning a knob. Fourth, it was the middle of the night, and an occupant is entitled to exercise more care before opening the door than might be the case during daylight. Fifth, Wend did not demand entry or otherwise request a response. He did not say "open the door" or "let us in," he merely said "search warrant." It would take a reasonable person a little longer to realize that the import of the words "search warrant" is "we have a search warrant and we want you to open the door so we can search." It might not take much longer to realize this, but when the relevant time frame is only five seconds, this natural, though momentary, hesitation must be considered as part of the relevant circumstances.

In the context of this case we do not think that inaction of an occupant for five seconds reasonably can be construed as a refusal of entry. (See, e.g., *People* v. *Neer, supra,* 177 Cal.App.3d at p. 996 and cases cited therein.)

*People* v. *Hobbs, supra,* 192 Cal.App.3d 959, relied on by respondent, is not to the contrary. In that case, officers approached the screen door of a

---

[2] Defendant testified that the curtain over the window by the door was open about six inches, and that this gap was covered by a sheer curtain. She did not see the uniformed officer outside the window, as is evident from her question "who is it?" when she arrived at the door. Wend also indicated the uniformed officer could not see into the house clearly—the officer reported to Wend that "someone" was coming. Wend specifically testified that the officer did not indicate whether "someone" was a man or a woman. Taken together this indicates that one would have had to move the curtain aside in order to see out the window.

house, in raid jackets, shirts with law enforcement shoulder patches, law enforcement hats, and badges prominently displayed. It was daylight outside. When the officers knocked, appellant, who was standing in the kitchen, looked over at them. One officer waved appellant over to the door. She approached to within about eight feet and asked what the officers wanted. It took five to ten seconds between the first knock and appellant's question. The officers stated their authority and purpose. Appellant stood looking at them for five more seconds. Under these circumstances—much less threatening and significantly more leisurely than those in the present case—the court held that appellant's continued inaction constituted an implied refusal of entry.

In the present case the late hour, the broken door, and the dress of the officers all combine to rob defendant's five-second delay of any significance whatsoever. We do not venture to say what might be a reasonable time from which denial of entry might be inferred in similar circumstances, but five seconds is not such time. Since the officers were not refused entry, and since exigent circumstances did not excuse that requirement of section 1531, we conclude that the forced entry was unreasonable under the Fourth Amendment. The seized cocaine should have been suppressed.

The judgment is reversed.

Stone (W. A.), J., and Brown (G. A.), J.,* concurred.

Respondent's petition for review by the Supreme Court was denied September 28, 1989.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.