217 Cal.App.3d 1219 (1990)
266 Cal. Rptr. 473
THE PEOPLE, Plaintiff and Appellant,
v.
ELAINE DOLORES TRUJILLO, Defendant and Respondent.
Docket No. H005661.
Court of Appeals of California, Sixth District.
February 8, 1990.
*1222 COUNSEL
John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, and Morris Beatus, Deputy Attorney General, for Plaintiff and Appellant.
Rose & Arnold, Ronald W. Rose and John M. Wadsworth for Defendant and Respondent.
OPINION
AGLIANO, P.J. 

1. Introduction

The People appeal from an order dismissing the prosecution of defendant Elaine Dolores Trujillo following the superior court's order granting her *1223 motion to suppress evidence. (§ 1238, subd. (7).)[1] The People contend the superior court erred in finding the police failed to comply with the knock-notice requirements of section 1531 in executing a search warrant. For the reasons stated below, we will reverse the order, finding substantial compliance.

2. Scope of review

(1a) We note the scope of review of suppression motion rulings has changed due to a 1986 amendment to section 1538.5, subdivision (i). Formerly, whether or not a defendant made a suppression motion at a preliminary hearing, the defendant was entitled to a "de novo" consideration of the evidence by the superior court.[2] Thus the superior court was the fact finder whose express and implicit factual determinations were given deference on appeals by defendants and the People. (E.g., People v. Lawler (1973) 9 Cal.3d 156, 160 [107 Cal. Rptr. 13, 507 P.2d 621]; People v. Leyba (1981) 29 Cal.3d 591, 596-597 [174 Cal. Rptr. 867, 629 P.2d 961]; People v. Poole (1986) 182 Cal. App.3d 1004, 1010-1011 [227 Cal. Rptr. 594]; cf. People v. Long (1987) 189 Cal. App.3d 77, 82 [234 Cal. Rptr. 271]; see People v. Laiwa (1983) 34 Cal.3d 711, 718 [195 Cal. Rptr. 503, 669 P.2d 1278].) The 1986 amendment, however, makes the findings of the magistrate "binding" on the superior court when a suppression motion has already been brought at the preliminary hearing, except to the extent new evidence is allowed by the superior court.[3] (2) (See fn. 4.), (1b) While the 1986 amendment could be clearer, it appears intended to make the magistrate the fact finder and the superior court a reviewing court, bound to resolve factual conflicts and draw inferences in favor of the magistrate's ruling. (People v. Ramsey (1988) 203 Cal. App.3d 671, 678-679 [250 Cal. Rptr. 309]; Anderson v. Superior *1224 Court (1988) 206 Cal. App.3d 533, 544 [253 Cal. Rptr. 651]; People v. Williams (1989) 213 Cal. App.3d 1186, 1191 [262 Cal. Rptr. 303].)[4]
An additional consequence of this amendment is that, on further appellate review of a suppression motion, the appellate courts must give the magistrate's express and implicit factual determinations the same deference formerly given those by the superior court. (Ramsey, supra, 203 Cal. App.3d 671, 679; cf. Anderson, supra, 206 Cal. App.3d 533, 545; People v. Drews (1989) 208 Cal. App.3d 1317, 1328 [256 Cal. Rptr. 846]; People v. Gonzalez (1989) 211 Cal. App.3d 1043, 1050 [259 Cal. Rptr. 846].) The former rule of deference to the superior court's factual determinations remains applicable only when no suppression motion was made at the preliminary hearing or when new evidence is allowed before the superior court. (Compare, e.g., People v. Brown (1989) 210 Cal. App.3d 849, 854-855 [260 Cal. Rptr. 293], with People v. Perez (1989) 211 Cal. App.3d 1492, 1494 [260 Cal. Rptr. 172].)
Defendant first moved to suppress evidence at the preliminary hearing; her motion was denied. She then moved to suppress evidence at a special hearing in the superior court. The superior court correctly recognized it was bound to accept the facts implicitly found credible by the magistrate, as we must on appeal. "Insofar as the evidence is uncontradicted, we do not engage in a substantial evidence review, but face pure questions of law." (Long, supra, 189 Cal. App.3d 77, 82, and cases there cited.)

3. Facts

On May 22, 1987, at about 7:45 a.m., San Jose Police Officer Mark Muldrow, with eight other officers, executed a search warrant at defendant's upstairs apartment. An officer had watched the apartment since 6:30 a.m. that morning and had seen a light go on for a short time before 7 a.m. He believed he had so informed Muldrow prior to the entry. All were wearing uniforms or yellow police raid jackets. Six officers approached the front door. Muldrow knocked four times on the door and announced, "San Jose police, we have a search warrant." After the first series of knocks, he heard "movement" inside the apartment but could not describe it or attach any significance to it. Since there was no response, Muldrow knocked again and waited approximately 18 seconds from the first knocks before kicking the door in. Several officers had their guns drawn. Inside the apartment were located cocaine, methamphetamine, and marijuana in amounts sufficient for sale, stolen property, and defendant in bed with a male child.

*1225 4. Knock-notice compliance

Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." In People v. Tacy (1987) 195 Cal. App.3d 1402 [241 Cal. Rptr. 400], we agreed with People v. Neer (1986) 177 Cal. App.3d 991, 997-1001 [223 Cal. Rptr. 555], that the knock-notice requirements have retained vitality after Proposition 8 because they are grounded in the Fourth Amendment to the United States Constitution. (195 Cal. App.3d at pp. 1413-1414.)
(3) As recognized in People v. Macioce (1987) 197 Cal. App.3d 262 [242 Cal. Rptr. 771], "The purposes and policies supporting the `knock-notice' rules are fourfold: (1) the protection of the privacy of the individual in his home; (2) the protection of innocent persons present on the premises; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice; and (4) the protection of police who might be injured by a startled and fearful householder." (Id. at p. 271.)
The People cite federal cases to support their contention that, under the circumstances, the 18-second delay between knocking and entering complied with the knock-notice requirements. (See generally Annot. (1974) 21 A.L.R.Fed. 820.) However, two of them seem to involve findings of excused noncompliance. (Rodriguez v. Jones (5th Cir.1973) 473 F.2d 599, 607, cert. den. 412 U.S. 953 [37 L.Ed.2d 1007, 93 S.Ct. 3023]; United States v. Wysong (9th Cir.1976) 528 F.2d 345, 348.) A third does posit, under the federal knock-notice statute,[5] "Generally, a wait of 20 seconds is deemed adequate before the officers may force entry." (United States v. DeLutis (1st Cir.1983) 722 F.2d 902, 909.)
It would simplify analysis to adopt a similar bright-line rule. However, such a mathematical formula would trivialize the policies behind the knock-notice rules. (4) As observed in a different context, "the rule ... is not mechanical...." (Hart v. Superior Court (1971) 21 Cal. App.3d 496, 501 [98 Cal. Rptr. 565].) A California case relied on by the People indicates that the amount of delay is but one of a number of relevant factors in ascertaining knock-notice compliance.
*1226 In People v. Elder (1976) 63 Cal. App.3d 731 [134 Cal. Rptr. 212] (implicitly overruled on another ground in People v. Chapman (1984) 36 Cal.3d 98, 109-113 [201 Cal. Rptr. 628, 679 P.2d 62]), the court explained, "Twenty seconds would clearly be too short a wait for a door-to-door salesman or at a house of gargantuan proportions or during a time normally associated with sleeping, but here we are dealing with a knock on the door during the early afternoon of a Friday. [Investigator] Marwin knew someone was in the house. Twenty seconds is not a flash of time allowing for no response at all. If an acknowledging voice from within had responded, 20 seconds may have been too short a time to wait. There was no such response. While in some cases there are noises heard within the residence which gives [sic] a clue as to whether a response is to be forthcoming, here there was no sound of a wild rampage of bull elephants toward windows and back doors while the staccato of flushing toilets interlaced the frenzy. Instead there was just silence. [¶] Silence for 20 seconds where it is known that someone is within the residence suggests that no one intends to answer the door. Twenty seconds of silence may be sufficient in one case and insufficient in another. Other than the question of waiting only 20 seconds, there was full compliance with section 1531. It is our conclusion that under the circumstances of this case, silence for 20 seconds reasonably allowed the officer to conclude that his demand for admittance was being declined. This is particularly true in light of the fact the officer knew at that time that a crime was being perpetrated inside the residence." (63 Cal. App.3d at p. 739.) At the time of the entry in Elder, the officers were aware that someone was in the residence taking bets over the phone. (Id. at p. 738.)
Compliance with knock-notice requirements depends on a variety of circumstances. Therefore, we need not analyze whether the magistrate or the superior court properly interpreted Jeter v. Superior Court (1983) 138 Cal. App.3d 934 [188 Cal. Rptr. 351], or other cases arising under sections 1531 or 844.[6] Suffice it to say we are aware of no case with identical facts.
It is impossible to calculate whether an 18-second delay was sufficient to allow the occupants to respond to a knock at the door without knowing the size and layout of the apartment. Such evidence was not before the magistrate when the suppression motion was made at the preliminary hearing. (5a) However, assuming an average-sized apartment, we question whether such a brief delay is sufficient to allow an occupant to answer a knock at the door unless the occupant is otherwise uninvolved and waiting for the knock. The generic "movement" heard by the officer, without more, is no manifestation of a refusal of entry. As the magistrate said, the sound "could be a *1227 dog." Even assuming the officers were further aware that a light had been briefly turned on and off nearly an hour before their entry, this fact does not support a conclusion that entry had been refused. If anything, it may suggest, as defendant asserts, that the occupant had gone back to bed.

5. Substantial compliance

(6) The People go on to assert there was at least substantial compliance with knock-notice requirements. In Tacy, supra, 195 Cal. App.3d 1402, we recognized a number of both state and federal authorities adopting a doctrine of substantial compliance with knock-notice requirements. (Id. at pp. 1414-1421.) "Substantial compliance means `"actual compliance in respect to the substance essential to every reasonable objective of the statute," as distinguished from "mere technical imperfections of form."'" (People v. Jacobs (1987) 43 Cal.3d 472, 483 [233 Cal. Rptr. 323, 729 P.2d 757]; italics in original.) The essential inquiry is whether under the circumstances the policies underlying the knock-notice requirements were served. (Ibid.)
One of the policies implemented by requiring the police to knock and announce themselves and their purpose is to prevent injury to the police or citizens who would react aggressively to a surprise, unannounced entry. As we observed in Tacy, supra, 195 Cal. App.3d 1402, "`To the extent that the rule prevents violence, its utility is exhausted when the actual announcement is made. The concern here is that an unannounced intrusion will provoke citizens to exercise their general right to repel intruders by force.... [I]f an occupant is predisposed to resist an entry by police, a substantial delay between announcement and entry could only give him time to prepare.'" (Id. at p. 1420, quoting United States v. Bustamante-Gamez (9th Cir.1973) 488 F.2d 4, 11.)
The other policy served by the requirement is to protect the privacy of occupants of residences. In Tacy, supra, 195 Cal. App.3d 1402, we further observed, "`The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrantless entry from entering his home. At the most, the "refusal of admittance" requirement gives him a few moments to decide whether or not he will open the door himself.'" (Id. at p. 1421, again quoting Bustamante-Gamez, supra, 488 F.2d 4, 11, italics omitted.) (7) The privacy interest at stake is thus "based on the reduced expectation of privacy that arises from a magistrate's determination of probable cause to believe that evidence of criminal activity will be found in the dwelling." (Gonzalez, supra, 211 Cal. App.3d 1043, 1048.)
(5b) Defendant contends her privacy was invaded because the entry did not give her time to get out of bed. The record does not support her *1228 suggestion that she was found in a "state of partial or complete undress." While the case is a close one, we conclude, under all the circumstances, the police delayed entry long enough after knocking and announcing themselves and their purpose to protect defendant's reduced expectation of personal privacy, even though the delay was not long enough to amount to an implicit refusal of entry.

6. Disposition

The orders dismissing the case and suppressing evidence are reversed.
Premo, J., and Elia, J., concurred.
A petition for a rehearing was denied March 1, 1990, and respondent's petition for review by the Supreme Court was denied April 26, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.
NOTES
[1] Unspecified section references are to the Penal Code.
[2] Section 1538.5, subdivision (i), formerly provided, "The defendant shall have the right to litigate the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing" in the superior court, though a suppression motion had been made at the preliminary hearing. (Stats. 1967, ch. 1537, § 1, p. 3654.)
[3] Section 1538.5, subdivision (i), now provides in pertinent part: "If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion in the superior court at a special hearing relating to the validity of the search or seizure.... If the offense was initiated by indictment or if the offense was initiated by complaint and no motion was made at the preliminary hearing, the defendant shall have the right to fully litigate the validity of a search or seizure on the basis of the evidence presented at a special hearing. If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence which could not reasonably have been presented at the preliminary hearing.... The superior court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the superior court as to evidence or property not affected by evidence presented at the special hearing." (Stats. 1986, ch. 52, § 1, p. 134.)
[4] Another aspect of the 1986 amendment is that now the preliminary hearing transcript is available for superior court review of a suppression motion without either a stipulation by the parties or its admissibility as hearsay. (Ramsey, supra, 203 Cal. App.3d 671, 678.)
[5] 18 United States Code section 3109 provides in pertinent part: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance...."
[6] As we observed in Tacy, supra, 195 Cal. App.3d 1402, 1411, footnote 2, section 844 is considered analytically interchangeable with section 1531, though 844 does not require a refusal before forced entry to make an arrest.