[Civ. No. 31797. First Dist., Div. One. Dec. 29, 1972.]

ODELL ALFORD, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Paul L. Rein for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Joyce F.

Nedde and Herbert F. Wilkinson, Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

**MOLINARI, P. J.**—Petitioner filed a petition for writ of prohibition seeking to restrain respondent court from proceeding to trial against him. An alternative writ was issued by this court restraining respondent court from proceeding to trial on count I of the information charging petitioner with the sale of narcotics. (Health & Saf. Code, § 11501.)

A motion for discovery of the identity and location of the material witness identified in police reports only as "C.R.I.-007" was filed in the court below. This witness was conceded by the district attorney to be the man who was the actual buyer or cobuyer in the sale alleged. The motion was denied.

Subsequently, at the preliminary hearing, the subject witness appeared and testified under the admitted false name of "Terry Kace." Petitioner was denied the right to cross-examine the witness as to his true name, identity, home address or location. At the conclusion of the hearing petitioner was held to answer to the superior court where he made a motion to set aside the information under section 995 of the Penal Code. This motion was denied and the instant proceedings seek a review of such denial.

The issue presented is whether the failure of the court to require "Terry Kace" to testify as to his true name and identity denied petitioner his Sixth and Fourteenth Amendment rights to confront and cross-examine a material witness as to petitioner's guilt. Before proceeding to consider this question we set out the pertinent facts.

On January 13, 1972, a paid informant known as "Terry Kace" or "C.R.I.-007" made contact with a juvenile known as "Sonny" in order to arrange for the purchase of narcotics. Sonny's telephone number was given to "Kace" by the Berkeley Police Department. "Kace" was taken to an apartment in Berkeley where he was introduced to petitioner from whom "Kace" purchased a quarter-spoon sample of cocaine for $20, paying for the purchase with a marked bill given him by the Berkeley Police Department. "Kace" was to purchase more cocaine if the sample was of acceptable quality.

That evening, at about 7 p.m., "Kace" went to petitioner's apartment accompanied by a federal agent named Olson. Petitioner arrived at 7:45 p.m.

Arrangements were made to buy an ounce of cocaine, with "Sonny" acting as an intermediary. "Kace" and "Sonny" left the apartment to obtain the money. At this point Inspector Wallace arrived with a search warrant which had been obtained on the basis of the narcotic purchase made earlier in the day. "Kace" told Wallace what had happened and "Sonny" was placed under arrest. Fearing for Olson's safety, Wallace and other officers went inside petitioner's apartment. Upon entering the apartment the officers placed petitioner under arrest. The search of the apartment uncovered numerous narcotics. A search of petitioner's person also produced some narcotics.

Petitioner argues that the fact that "Terry Kace" was permitted to testify against petitioner in the preliminary examination without revealing his true name and identity denied petitioner his right to confront and cross-examine a witness against him. As disclosed by the records, "Terry Kace" was the only person present at the first purchase who is testifying against petitioner as to this transaction which forms the basis of the first count of the information. The record discloses that "Kace" was an informer who works for the Berkeley Police Department on an hourly basis. His duties are to "set up" narcotics purchases in connection with police investigation and suppression of narcotics activity.

We first observe that section 865 of the Penal Code pertaining to preliminary examinations, in pertinent part, provides as follows: "The witnesses must be examined in the presence of the defendant, and may be cross-examined in his behalf." ▮▮▮ In the instant proceeding petitioner sought to avail himself of the right of cross-examination. A part of such examination he asked "Terry Kace" what his true name was. "Kace" admitted that "Terry Kace" was not his true name but refused to reveal his true identity. The court's response to petitioner's request that "Kace" be required to give his true name was, "The man may call himself anything he wants, so long as it is not used for the purpose of some illicit activity . . . ."

In *Alford* v. *United States,* 282 U.S. 687, 691-692 [75 L.Ed. 624, 627, 51 S.Ct. 218], the United States Supreme Court articulated the right of cross-examination as follows: "Cross-examination of a witness is a matter of right. *The Ottawa,* 3 Wall. 268, 271. Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood, [citations]; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment, [citations]; and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased. [Citations.]"

Although the record does not disclose petitioner's purpose in inquiring as to "Kace's" identity he should have been permitted to do so. As observed in *Alford,* "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. [Citations.] It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. [Citations.] To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. [Citations.]" (287 U.S. at p. 692 [75 L.Ed. at p. 628].)

*Alford* dealt with cross-examination at trial. We see no reason, however, why the same principles should not apply at preliminary hearings since a defendant is entitled to present evidence at such hearing to establish that there is no probable cause to hold him for trial. (See *Jennings* v. *Superior Court,* 66 Cal.2d 867, 880 [59 Cal.Rptr. 440, 428 P.2d 304]; *Jones* v. *Superior Court,* 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241].) ■ No citation of authority is needed for the proposition that probable cause may be dispelled by testimony elicited under cross-examination as well as by direct testimony.

In *People* v. *Brandow,* 12 Cal.App.3d 749, 755 [90 Cal.Rptr. 891], it was held that an informer was required to disclose her true identity and her address where she was the only witness against defendant, notwithstanding there was substantial evidence that the witness was in danger. This holding answers real party's contention that there will be threats to "Kace" if his true identity is disclosed. ■ We observe, moreover, that on balance the threat of a deprivation to a defendant of his right to a fair trial outweighs a threat to an informer. (See *Eleazer* v. *Superior Court,* 1 Cal.3d 847, 852 [83 Cal.Rptr. 586, 464 P.2d 42].) As to the first purchase of cocaine "Kace" is the only material witness. This circumstance, under principles discussed above, warranted the granting of great latitude in petitioner's cross-examination of "Kace" and such latitude embraced the right to ascertain "Kace's" true identity.

Real party argues that because there was corroborating evidence consisting of the marked $20 bill with which "Kace" allegedly paid for the cocaine and the sample of cocaine "Kace" allegedly received from peti-

tioner, there is sufficient evidence to find that there was probable cause to commit petitioner on this charge. These circumstances do not obviate the right of proper cross-examination. In *Smith* v. *Illinois,* 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748], where the facts were essentially similar to those in the instant case, the high court held that the defendant's right to cross-examination had been denied when the informer was not required to testify as to his true identity. In *Smith* the prosecution witness informer testified that he had purchased a bag of heroin from the defendant in a restaurant with marked money provided by the police. The only witness as to what occurred inside the restaurant was the informer. His testimony was, in part, corroborated by the testimony of police officers who testified that the informer had entered the restaurant with the marked money and without narcotics; that the informer had emerged from the restaurant with a bag of heroin; and that they found some of the marked money in the defendant's possession when they arrested him.

In reaching its holding *Smith* made these pertinent observations: "In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." (390 U.S. at p. 131 [19 L.Ed.2d at p. 959].)

█ We apprehend that while the magistrate should have required "Kace" to reveal his true identity, the failure to do so does not require that we restrain the court from proceeding to trial with the remaining three counts of the information, i.e., counts II, III and IV. "Kace" was not a witness as to the counts involving the charges of narcotic possession resulting from the search of the apartment and petitioner's person, and he was not the principal prosecution witness in the arrangements made for the second purchase of cocaine when "Kace" was in the company of Olson, the federal agent, and the juvenile, "Sonny." As to the latter count, there was sufficient evidence to establish probable cause other than "Kace's" testimony. We perceive that there could be a holding to answer this count, notwithstanding that "Kace" could be completely discredited as to his testimony concerning the occurrence forming the basis of this charge.

 Let the peremptory writ issue restraining the superior court from bringing petitioner to trial on count I of the information.

Elkington, J., and Weinberger, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.