[Civ. No. 57170. Second Dist., Div. One. Nov. 2, 1979.]

MARK ALAN MILLER, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Cohen & Guberman and Susan Guberman for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and Donald C. Glynn, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**ROTHMAN, J.***—Petitioner filed a verified petition for a writ of prohibition pursuant to Penal Code section 999a.[1] In addition, petitioner lodged with this court certified reporters' transcripts of a discovery hearing in the municipal court on May 31, 1979, and a preliminary hearing on July 2, 1979. Real party in interest, the People of the State of California, through their attorney, the District Attorney of Ventura County,

---

*Assigned by the Chairperson of the Judicial Council.

[1]Penal Code section 999a provides for review by prohibition of the denial of a motion under Penal Code section 995 on the ground that the information was found without reasonable and probable cause.

filed a memorandum of points and authorities in opposition to the petition. They filed no return to the writ, and, accordingly, this court must accept the factual allegations in the petition to be true.

Petitioner was arrested on May 8, 1979, for sale of cocaine. A complaint was filed, and on May 22, 1979, petitioner filed a motion for discovery, wherein a request was made for the address of an informant who would be a material witness on the issue of petitioner's guilt or innocence. On May 31, 1979, the court made certain discovery orders, including the informant's name, but excluding revealing the address of the informant before the preliminary hearing. Although the district attorney said the informant would be a witness at the preliminary hearing, he objected to the disclosure of the informant's name and address "for the obvious protection of the informant."

On July 2, 1979, the preliminary hearing was held, at which time the informant, James Edward Silver, testified to purchasing the cocaine from the defendant. On cross-examination of Silva, the following facts were elicited bearing on the issue of credibility: Silva, a 19 year old, had been arrested by Officer Perkins for marijuana cultivation and possession for sale of marijuana, and a pill offense. His case was pending at the time of the transaction involving defendant, and at the time of the preliminary hearing. Although Perkins made no promises, Silva agreed to set up three drug purchases in exchange for help involving his case. After numerous denials of knowledge of what Perkins intended to do to help Silva, Silva finally acknowledged that Perkins had told him on the day of his testimony in the preliminary hearing that Perkins would recommend the dismissal of the case against Silva. He testified that he was not working at the time of the transaction with defendant, and had not worked in a while. He said he was working at the time of the preliminary hearing at "Puralator," but did not know the address. He testified that he might have sold narcotics to officers before, that he in part made a living from selling drugs, sometimes earning $300 to $500 per week, but denied he was doing so at the time of the preliminary. He testified that he had bought drugs from defendant in the past and that defendant bought from him in the past, including cocaine. He was not defendant's sole supplier, and had discussed purchasing from defendant two weeks before defendant's arrest. He said he had set up one other sale and was supposed to set up a third. He denied trying to sell marijuana to defendant two weeks before the preliminary. Part of his agreement with Perkins was to testify against defendant, to tell the

truth, and convict Miller. He was concerned about jail, had no other arrests and had used an alias of Jim Robertson when he was 17.

The court sustained objections to questions on cross-examination on these subjects: the details as to Silva's arrest; the number of times Silva sold drugs; his previous work history; his last narcotics sale; identity of others of defendant's friends he sold to; all his other past aliases; and why he did not get an attorney. On cross-examination of the informant, the following occurred:

"Q. BY MS. GUBERMAN: Where do you live, Mr. Silva?

"A. In Thousand Oaks.

"Q. What's the address?

"MR. GLYNN: Excuse me. Objection.

"If counsel wishes to have contact with this witness, I would prefer that she be asked to do it through Detective Perkins.

"MS. GUBERMAN: Well, your Honor, I'm entitled to inquire as to his residence and his location. The cases are very clear on that, Alber case, Bandow, various other cases.

"THE COURT: Do the People have any other comments concerning that?

"MR. GLYNN: Your Honor, I think it's obvious for this witness's protection that we limit contact through Detective Perkins. We will make this witness available for interview at any time that counsel likes, but to have this witness testify as to what his address is is going to leave him open to all sorts of harassment from the Defendant or his friends.

"I'm not saying that will happen. I'm just saying for his protection I would ask the Court not to make us divulge that.

"THE COURT: Anything further?

"The objection is sustained."

Ms. Guberman pressed her objection to no avail. After the People rested the court asked defense counsel if the defense wished to produce any witnesses. Having been foreclosed from securing the informant's address, defense counsel advised the court that she was not able to go forward. In further discussion on the issue of the need for an address, counsel requested the address so she could get a continuance to subpoena witnesses to impeach the informant on his reputation for truth, veracity and reputation as a drug dealer in his community.

The information filed after the preliminary hearing charged a violation of Health and Safety Code section 11352, sale of controlled substance. On August 6, 1979, the petitioner moved in the Superior Court of Ventura County to dismiss this information under Penal Code section 995. The court denied the motion.

Petitioner sought a writ of prohibition against the superior court from taking any further action other than dismissal.

On September 19, 1979, we issued an alternative writ ordering the superior court to desist from further proceedings in the case and grant the motion to dismiss, or in the alternative to show cause why a peremptory writ should not issue. The matter came on regularly for hearing on October 23, 1979.

■ Defendant's request for the informant's address was proper and should have been granted. The fundamental right of cross-examination includes eliciting the address of a witness in order that "the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood" and that "facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased." (*Alford* v. *United States,* 282 U.S. 687, 691-692 [75 L.Ed. 624, 627, 51 S.Ct. 218].) The right to a full and fair preliminary hearing includes these rights.

In *Hawkins* v. *Superior Court,* 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], the Supreme Court required postindictment preliminary hearings to ensure equal protection of the law. In so doing, the court made certain references to the significance of preliminary hearings: "...The United States Supreme Court catalogued some of them [the functions for the accused in a preliminary hearing] in *Coleman* v. *Alabama* (1970) 399 U.S. 1, 9-10..., holding the Alabama preliminary

hearing at issue therein to be 'a "critical stage" of the State's criminal process' at which the defendant had a right to 'the guiding hand of counsel.' The court observed that a 'skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at trial.' It went on to recognize the important discovery function served by an adversarial preliminary hearing; such a hearing will assuredly provide the defense with valuable information about the case against the accused, enhancing its ability to evaluate the desirability of entering a plea or to prepare for trial...." (22 Cal.3d 588.)

In *Alford* v. *Superior Court,* 29 Cal.App.3d 724 [105 Cal.Rptr. 713], the court issued a writ of prohibition after objections were sustained at a preliminary hearing to questions about the true identity and address of the informant. In the instant case the petitioner made a showing that the address of the informant was necessary to receive a full adjudication of the informant's veracity which was in this case crucial to a fair preliminary hearing. Although given every possible opportunity, the People never established any cause for withholding the address, and conceded in oral argument that there was not a sufficient showing of danger to the witness.

The People rely on *People* v. *Mardian,* 47 Cal.App.3d 16 [121 Cal.Rptr. 269]. In that case the court held that there was no prejudice to the defendant from a failure to require a witness to reveal his address because at trial the defense was able to put the weight and credibility of the witness' testimony to the test by other questions and by other witnesses.[2]

Here, as in *People* v. *Brandow,* 12 Cal.App.3d 749 [90 Cal.Rptr. 891], *People* v. *Mascarenas,* 21 Cal.App.3d 660, 666 [98 Cal.Rptr. 728], and *Alford* v. *Superior Court,* 29 Cal.App.3d 724 [105 Cal.Rptr. 713], the case involved a single informant witness whose credibility was central to the defense. Although significant cross-examination took place at the preliminary hearing (including a recent arrest for substantial narcotics charges, past purchases and sales of narcotics and the informant's motive to lie), the denial of the informant's address for no reason, deprived the defense of a full opportunity to test the weight and

---

[2]In oral argument both counsel cited *People* v. *Biehler,* a decision of this court filed March 5, 1979. However, the Supreme Court ordered that the case not be published.

credibility of the witness. The possible additional impeachment via the witness' bad reputation for veracity or for extensive narcotics dealing might well have tipped the scales of veracity and resulted in the magistrate's disbelief of the witness and refusal to bind over the defendant. Defendant was entitled to a preliminary hearing wherein the veracity of the witness was fully and properly tested after revelation of properly discoverable information about the informant.

The People also cite *Eleazer* v. *Superior Court,* 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], as authority to support the proposition that this court could, in the alternative to ordering dismissal of the information, simply order the district attorney to disclose the address. *Eleazer* involved appellate review by prohibition of a court's refusal to order production of an informant at the close of a preliminary hearing. The Supreme Court specifically held that dismissal of the information was not warranted since the court had announced a rule not previously made clear (on the People's duty to locate an informant) and since the district attorney might still have been able to comply.

In the instant case the rule of disclosure of the informant's address was well-established before the instant case, and the duties of the district attorney to provide, and of the magistrate to so order on a proper motion, have also been settled. Defendant, by timely request, did everything possible to save the magistrate from error. The opportunity for a second chance given by *Eleazer,* and the reason therefore, do not exist in this case.[3]

Let the peremptory writ of prohibition issue, restraining respondent court from taking any further action in its case No. CR 14805 except to vacate its order denying petitioner's motion under Penal Code section 995 and thereafter to grant such motion.

Lillie, Acting P. J., and Hanson, J., concurred.

---

[3]Counsel for real party in interest stated in oral argument that it was not "their practice" to disclose informants' addresses under any circumstances. We do not approve of adherence to practices by prosecutorial authorities which do not take into account established and binding legal authorities.