[No. B060403. Second Dist., Div. Three. Apr. 17, 1992.]

OLIVER B. MONTEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Charles Gessler, William Thornbury and Henry J. Hall, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Maurice H. Oppenheim and Glenn R. Britton, Deputy District Attorneys, for Real Party in Interest.

OPINION

HINZ, J.—

### INTRODUCTION

In a motion to disclose the addresses and phone numbers of eyewitnesses to a murder, the prosecution made a showing of sufficient danger of threats or harm to the witnesses, and the defense did not plausibly allege that the witnesses' veracity in their community was at issue. We therefore deny a petition for writ of mandate seeking to compel disclosure of this information.

On August 9, 1991, Oliver B. Montez (petitioner or Montez) filed a petition for writ of mandate naming the Los Angeles County Superior Court as respondent and the People of the State of California (the People) as real party in interest. The People's opposition followed on September 10, 1991. Defendant Datan Newton filed a joinder in application of Montez on September 17, 1991, and on that day petitioner filed a reply to the opposition. This court denied the petition on October 3, 1991.

On November 21, 1991, the California Supreme Court granted a petition for review, and transferred the matter to this court with directions to vacate its order denying mandate and to issue an alternative writ to be heard when the proceeding is ordered on calendar. On December 3, 1991, petitioner filed a request for immediate stay of proceedings against him pending resolution of the issues in the petition. On December 6, 1991, pursuant to the the the California Supreme Court's order, this court ordered the Los Angeles County Superior Court either to vacate the June 10, 1991, order denying petitioner's discovery motion, or, in the alternative, to show cause why a peremptory writ of mandate ordering it to do so should not issue.

On January 27, 1992, respondent filed a return and answer to petition for writ of mandate, to which petitioner replied with a traverse filed February 7, 1992.

## FACTS

The petition alleged the following facts. Petitioner is charged with two counts of robbery in violation of Penal Code[1] section 211, four counts of attempted robbery in violation of sections 664 and 211, two counts of aggravated assault in violation of section 245, subdivision (a), one count of murder in violation of section 187, and with the special circumstance allegation that the murder was committed while petitioner was engaged in the crime of robbery within section 190.2, subdivision (a)(17)(i). As they are charged as having occurred on February 21 and April 30, 1990, the alleged offenses predate the enactment of Proposition 115.

On January 10, 1991, petitioner's counsel filed a notice of motion for pretrial discovery, seeking addresses and telephone numbers of witnesses called to testify against him at trial. The trial court held several hearings on the motion.

The prosecutor stated that everything had been provided except for addresses and phone numbers. Since two defendants were gang members and there was fear on the part of witnesses, the People moved under section 1054.1 that if the court ordered the People to give addresses and phone numbers, the information should go only to attorneys. The court noted that if civilians oppose releasing this information, "I generally order that in the alternative, that either the names and addresses be released or in lieu thereof, method of soliciting interviews with the witnesses." The prosecutor stated that the People would make the witnesses available at defense counsel's convenience.

---

[1]Unless otherwise specified, statutes in this opinion will refer to the California Penal Code.

Petitioner's counsel stated that he would not share names, addresses, or phone numbers with the defendants, that he would abide by the law, and that the court should assume he would abide by the law. The trial judge stated he did not base the ruling on any allegation of gang membership. The judge said he did not release names, addresses, and phone numbers of civilian witnesses who did not want them disclosed. Such witnesses, however, had to be available for interviews at the office of defense counsel or the district attorney. The judge further stated that if the defense made a special showing why it needed phone numbers and home addresses, the court would consider it. Otherwise, if the defense only wanted to interview a particular witness, that witness had the right not to release the name, address, and phone number.

At an April 12, 1991, hearing, defense counsel stated he had filed an amendment to his discovery motion regarding disclosure of witnesses' names, addresses, and phone numbers, adding case authority that he believed required their production unless the People came forward with legal reasons why the information should not be produced. The court stated it would release the information where the defense showed the witness's credibility was at issue and had some bearing on whether the witness was considered a truthful person in the neighborhood.

On April 19, 1991, the prosecutor stated that among many other items of evidence, state and federal background checks done on "nearly all" of the People's civilian witnesses revealed no convictions. The court cited the prosecutor's statement that there was a showing to be made that the defendants had gang associations. The court ruled: "With respect to whatever addresses of civilian witnesses have been whited out or have not been recorded because there was an attempt to keep that information confidential, the District Attorney is going to be required to turn those address[es] over to the defense unless the District Attorney presents to this court either the witness him or herself to state that they do not want that released and giving me their reasons therefor." The court stated it would also accept witnesses' written statements giving reasons why they did not want their addresses disclosed.

When informed that an investigator who interviewed the witnesses was prepared to testify that they have directly told him of their unwillingness to disclose addresses and phone numbers, the trial court stated that was not sufficient. Defense counsel objected to the use of written statements.

In a June 10, 1991, hearing, the court stated the district attorney furnished a document listing witnesses and work and home addresses and telephone

numbers for many of them, and several statements indicating that a witness did not wish disclosure of the home address or phone. Defense counsel objected because the witnesses did not come into court to testify or submit written declarations under penalty of perjury about what their fear was. Defense counsel further objected that nothing showed the witnesses had a real apprehension that any of the three defendants or their associates would hurt them or someone close to them.

Finding that the veracity of these witnesses was not an issue, the trial court found no reason to disclose the home address and phone number, and ruled not to order that information divulged.

The People's opposition alleged the following facts adding to or contradicting those alleged in the petition. During hearings on the issue of disclosing the witness's addresses and phone numbers, the People offered to make the witnesses available in the prosecutor's office or elsewhere. The People also informed the court concerning the defendants' gang involvement.

The trial court's final ruling concerned four witnesses, Jesus Ruano, Marco Fernandez, Greg Armstrong, and Amado Navarro Leal (also known as Amado Navarro). The four were eyewitnesses to the shooting of the manager of the business that employed them. Three witnesses present in the restaurant when the manager was murdered identified the petitioner as the murderer on several occasions. The fourth witness was outside but heard the shots and saw men with guns. Their letters and statements requesting nondisclosure appear in exhibit 2 to the opposition. Additional evidence against the petitioner includes a statement he made to his grandfather containing admissions, and circumstantial evidence that includes a fingerprint found in a car seen near the scene.

## ISSUE

The petition and related pleadings claim that the petitioner is entitled to discover the witnesses' addresses and telephone numbers, both under the law in existence before the passage of Proposition 115 and under that proposition.

## DISCUSSION

The petition argues based on *Miller* v. *Superior Court* (1979) 99 Cal.App.3d 381 [159 Cal.Rptr. 456].

In *Miller*, an informant testified at the preliminary hearing to purchasing cocaine from the defendant. Officer Perkins had arrested the informant for

marijuana cultivation, possession of marijuana for sale, and "a pill offense." The informant's case was pending during the time of the transaction involving the defendant and during the informant's preliminary hearing testimony. Perkins had made no promises, but the informant had agreed to set up three drug purchases in exchange for help involving his own case.

The informant admitted that on the day of his preliminary hearing testimony, Perkins told him he would recommend dismissal of the case against him. The informant testified he was unemployed when the drug transaction took place and had in part made his living from selling drugs, though he denied doing that at the time of the preliminary hearing. He testified to his involvement in a series of drug sales to and purchases from the defendant. He had formerly used an alias. He was "concerned" about jail. (99 Cal.App.3d at pp. 383-384.)

█ These facts shed light on the differences between *Miller* and the case at bench. The *Miller* opinion itself summarizes some of them. "[T]he denial of the informant's address for no reason[] deprived the defense of a full opportunity to test the weight and credibility of the witness. The possible additional impeachment via the witness's bad reputation for veracity or for extensive narcotics dealing might well have tipped the scales of veracity and resulted in the magistrate's disbelief of the witness and refusal to bind over the defendant. Defendant was entitled to a preliminary hearing wherein the veracity of the witness was fully and properly tested after revelation of properly discoverable information about the informant." (99 Cal.App.3d at pp. 386-387.)

The four witnesses in the case at bench were employed in the market where the shooting occurred. They had not been arrested for other offenses still pending at the time of their testimony, had made no deal with an arresting officer, and did not have a "concern" about imprisonment. No evidence suggested that any of the witnesses had a criminal history. The case at bench did not involve a police informant's participation in drug sales. It involved a shooting and murder. The prosecutor alleged that the defendants had gang affiliations. Four witnesses described their fears for their safety and that of their families. There was no showing that the four witnesses had a bad reputation for veracity or for extensive narcotics dealing, or as the trial judge pointed out many times, that there was any question concerning their bias or veracity.

*Miller* based its holding on the following principle: "The fundamental right of cross-examination includes eliciting the address of a witness in order that 'the witness may be identified with his community so that independent

testimony may be sought and offered of his reputation for veracity in his own neighborhood' and that 'facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased.' [Citation.]" (99 Cal.App.3d at p. 385.)

*Miller* premised this rule, however, on the existence of facts that place the witness's "reputation for veracity in his own neighborhood" at issue. So do the other cases cited in the petition that involve similar facts.[2]

---

[2]*People* v. *Watson* (1983) 146 Cal.App.3d 12, 20-21 [193 Cal.Rptr. 849]: witness had used, sold, and trafficked in illegal drugs and had earned income from those activities; had a prior felony conviction; had for several years worked with law enforcement agencies as an informant and had sold information to them; and the agency he currently worked for knew of his illegal involvement with drugs but had not tried to make a case against him. *Alford* v. *Superior Court* (1972) 29 Cal.App.3d 724, 726-727 [105 Cal.Rptr. 713]: witness worked for police department on an hourly basis, under an alias, setting up narcotics purchases in connection with police investigation and suppression of narcotics activity; witness was paid by police department to arrange drug purchase; police provided witness with telephone number of purchaser and with marked bill for payment; witness went to defendant's apartment accompanied by federal agent and arranged to buy cocaine; second law enforcement officer arrived; searches and arrest of defendant followed. *Smith* v. *Illinois* (1968) 390 U.S. 129, 130-131 [19 L.Ed.2d 956, 958-959, 88 S.Ct. 748]: principal prosecution witness testified he purchased heroin from defendant with marked money provided by police officers, but only he and defendant were present, and their testimony differed completely; witness admitted using an alias, but trial court sustained objections to questions seeking his true name and his address. Where a witness's admission of alias places his credibility at issue, to forbid cross-examination on true name and address violates right of cross-examination.

The other cases cited in the petition involve different factual situations. *Alford* v. *United States* (1931) 282 U.S. 687, 693-694 [75 L.Ed. 624, 628-629, 51 S.Ct. 218]: trial court erroneously prevented defense counsel from inquiring about where witness lived when defense counsel sought to inquire whether witness was in custody of federal authorities, to show witness's bias or prejudice, and where there was no indication that inquiry would go beyond bounds of proper cross-examination by harassing, annoying, or humiliation of witness. *United States* v. *Navarro* (7th Cir. 1984) 737 F.2d 625, 633-634: defendant's inability to cross-examine chief government witness, who worked with federal drug enforcement agency as an informant, regarding his home address and place of employment did not require new trial where district court judge viewed the information as irrelevant to issues at trial, where witness stated generally that he lived in Chicago and worked for a security agency, where defense counsel did not engage in exploratory cross-examination concerning the witness's residence or employment within the bounds permitted by the trial court, and where defendant placed before the jury ample testimony concerning the witness's criminal record, immigration problems, and relationship with the Drug Enforcement Agency in an effort to discredit witness's testimony. *People* v. *Mersino* (1965) 237 Cal.App.2d 265, 269 [46 Cal.Rptr. 821]: no right to interview grand jury witnesses, admonished by grand jury foreman to remain silent, before trial unless witness consents. *Norton* v. *Superior Court* (1959) 173 Cal.App.2d 133, 136 [343 P.2d 139]: prosecution did not indicate that three eyewitnesses to robbery had been subpoenaed to appear at the trial, or that there was reasonable cause to believe that anyone would harass the witnesses or attempt subornation of perjury, so defendant should be afforded witnesses' names and addresses. *Schindler* v. *Superior Court* (1958) 161 Cal.App.2d 513, 520 [327 P.2d 68]: petitioners charged with murder entitled to order that district attorney cease interfering with defense counsels' right to discuss autopsy findings with autopsy pathologist.

The case at bench, by crucial contrast, contains no facts placing the four witnesses' reputation for veracity in their own neighborhood at issue. An informant who is himself accused of cultivating, selling, and possessing drugs and whose prosecution is pending, who agrees to participate in further drug transactions at the behest of police, and who testifies about those transactions at a preliminary hearing, would seem to have waived the right to assert a right of privacy as to his address, especially when the crimes themselves did not involve violence or allegations of the defendant's affiliation with gangs. Employees who witness crimes committed by those entering their place of employment and who are otherwise unconnected with the crime, with initiating it, or with creating the circumstances in which it occurred, would seem to retain every right to keep their addresses private. That is particularly true given the violent nature of the crimes and allegations concerning the defendants' affiliations with violent criminal gangs.

As the petition concedes, the addresses need not be disclosed when doing so would endanger the witness. The constitutional right of cross-examination "ordinarily requires an adverse witness, when asked, to disclose his place of residence. However, this constitutional right does not inflexibly compel the witness to respond if disclosure would create a threat to his safety. Here, as proponent of the witness, the People bear the burden of so showing by competent evidence." (*People* v. *Watson, supra,* 146 Cal.App.3d at p. 16.)

Although the ruling in the case at bench occurred before Proposition 115 was enacted, section 1054.7 adopts this standard.[3] Section 1054.7 applies to pending cases regardless of when the charged offense allegedly occurred. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 299-300 [279 Cal.Rptr. 592, 807 P.2d 434].)

As the trial court's statements in the hearing implied, and as the People point out on appeal, the cases distinguish between "a witness of questionable character such as a police narcotics informant [who] provided the only evidence against the defendant" and a situation in which numerous witnesses

---

*Walker* v. *Superior Court* (1957) 155 Cal.App.2d 134, 139-140 [317 P.2d 130]: proper for court to entertain a motion to compel the sheriff to annul his order to witness not to talk to defendant or defense counsel; court has no authority to order compelling a witness to talk or submit to an interview who objects to doing so.

[3]That section states in part that "The disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred. 'Good cause' is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement."

observed a shooting in a place of business. Where the defense remains free to cross-examine witnesses fully, except as limited by a ruling barring disclosure of home addresses, and where the addresses would not aid the defense in showing the witnesses' reputation for untruthfulness or bias, the trial court may properly exercise its discretion to preclude the defense from asking for their home addresses. (*People* v. *Benjamin* (1975) 52 Cal.App.3d 63, 75 [124 Cal.Rptr. 799].)

The defendants are accused of violent crimes. Two were armed. One defendant allegedly fired six shots at a victim, killing him. The prosecutor alleged that the defendants had gang affiliations. All three defendants lived within a few blocks of each other.

All four witnesses provided a written statement requesting nondisclosure of their phone numbers and addresses. Witness Leal's letter stated in part: "Previous attempts to harass myself and my family have been made by associates of the defendants, who are known to have gang affiliations."

Witness Ruaro's letter stated in part: "I also don't want to give out my home address or work address or phone numbers, because my mom and dad fear that these people might come back and avenge their conviction toward us. Also these people are capable of doing the same crime again without thinking twice about it."

Witness Armstrong's letter stated in part: "I was asked by Dep[u]ty Dist[rict] Att[orne]y Sorrentino if I was willing to give my home & or b[usi]ness address & phone numbers to the defense. I've told him defin[ite-]ly no! When I was in court in the prelims, I noticed persons who appeared to me to be either relatives & or fr[ie]nds of the defend[a]nts checking me out as to intimidate me."

Witness Fernandez's letter stated in part: "The D.A. asked me if I wanted to give my name[,] address[,] or school address or home number. I talked it over with my parents and we decided not to give it out because I wouldn't feel safe and I'm wor[r]ied for my family too. If these guys found out or their friends they could do bad thing[s] to me or my family. My mother is frighten[e]d."

Is this showing sufficient to support the trial court's exercise of its discretion in ruling that good cause barred disclosing the witnesses' addresses and phone numbers? We think it is, particularly insofar as the facts raise no issue of their reputation in the community for veracity. Throughout hearings on this issue, the trial judge demonstrated a proper concern for the

rights of the defendants, the prosecution, the judicial system, and of the witnesses. As the trial judge stated, a criminal defendant's rights remain of paramount importance. Those rights, however, are not the only ones that a trial judge may have to consider. Under the circumstances, the trial judge carefully considered and correctly reconciled all of these conflicting rights.

We again deny the petition.

### DISPOSITION

The petition is denied, and the alternative writ is discharged.

Klein, P. J., and Danielson, J., concurred.

Petitioner's application for review by the Supreme Court was denied July 9, 1992. Mosk, J., and Kennard, J., were of the opinion that the application should be granted.