Opinion
 

 COTTLE, P. J.
 

 Introduction
 

 On September 26, 1996, Romel Demetrias Reid (petitioner or Reid) filed a petition for writ of mandate and/or prohibition naming the Santa Clara County Superior Court as respondent and the People of the State of California (the People) as real party in interest. In his petition Reid asked this court to direct respondent to vacate its order preventing defense counsel from directly contacting the victims in this case. We denied the petition on October 18, 1996. On November 26, 1996, the California Supreme Court granted Reid’s petition for review, and transferred the matter to this court with directions to vacate our previous order and to issue an alternative writ. On December 5, 1996, we stayed all further proceedings in the matter pending our review of the petition and issued an order for the real party to show cause why the petition should not be granted.
 

 This case presents the issue whether a trial court may prohibit all representatives of a criminal defendant from personally contacting the victims
 
 *1329
 
 during preparation of the defense to protect victims from “embarrassment,” “harassment," “adverse publicity,” or a violation of “their privacy . . . due to the high profile nature of [a] case” based upon the victims’ stated objections “to any contact” by the defense attorney’s “office or any investigator for purposes of an interview.” We conclude the trial court abused its discretion by limiting petitioner’s due process and statutory right to have access to potential witnesses when it exceeded the statutory exceptions to discovery set forth in sections 1054 through 1054.7 of the Penal Code. We therefore grant the petition for writ of mandate.
 
 [1]
 

 Facts and Procedural History
 

 Petitioner is charged by indictment with 23 offenses in the San Francisco peninsula area, the last of which occurred in January 1996, the month in which petitioner was arrested. Each offense involves a single victim; in total, the indictment lists 15 female victims.
 

 The charges include seven counts of forcible rape (Pen. Code, § 261, subd. (a)(2)),
 
 [2]
 
 eight counts of second degree robbery (§§ 211/212.5, subd. (c)), three counts of assault with intent to commit rape (§ 220), three counts of assault by means likely to produce great bodily injury or by use of a deadly weapon (§ 245, subd. (a)(1)), one count of attempted second degree robbery, and one count of reckless evasion of a peace officer (Veh. Code, § 2800.2). The forcible rape charges contain various additional allegations, including, for example, that petitioner kidnapped a victim, personally inflicted great bodily injury upon her, or used a dangerous or deadly weapon in the commission of the offense. As to each count, the indictment alleges petitioner has served a prior prison term within the meaning of section 667.5, subdivision (b). Petitioner’s case has received extensive media attention in which petitioner has been dubbed the “Peninsula rapist.”
 

 Petitioner filed a motion to compel discovery of several items, including the names and addresses of the alleged victims of the charged offenses. Petitioner’s counsel stipulated he would “not relay to [his] client. . . [or] to anybody not assisting in [petitioner’s] defense any of the addresses and telephone numbers of witnesses provided to [him] by the People pursuant to discovery . . . .”
 

 The People filed a response to petitioner’s discovery motion in which they argued the defense “is not entitled to the names and addresses of the
 
 *1330
 
 victims" because the crimes in this case involve brutal rapes in which the victims were “snatched right off the streets” and often “beaten,” “threatened,” or “robbed,” because the “privacy of the victims is more difficult to protect” here because the case has received “intense publicity and media attention,” and because the victims “are frightful of anything connected with the defendant, including members of the defense team.”
 

 As part of their memorandum opposing discovery of the names and addresses of the victims, the People contacted the victims, “all of whom had expressed a desire not to talk to any members of the defense team and were desirous of not having their names, addresses, and telephone numbers revealed to the defense” because they were concerned a defense investigator inquiring about them or appearing at their homes or businesses would reveal they were “victims in this high profile case.” In conjunction with their memorandum, the People filed with the superior court “declarations” from 13 of the 15 victims; filed separately in this court under seal, these “declarations” are not signed under penalty of perjury or with the full and/or true names of the victims. The declarations were prepared by the People “In Support of Non-Disclosure of Full Name and Address of [Each] Witness . . . Pursuant to Penal Code 1054.7.” In each declaration, the victim checked a box next to the sentence “I do not wish to be contacted by the defense attorney or investigator for purposes of an interview.” Each victim also checked boxes next to sentences which expressed an objection to her “full name” and her “address and telephone number” being “disclosed to the defense attorney and investigators.” Under a heading “Reason for Non-disclosure of Information,” the People had placed boxes next to the following three reasons: receipt of threats concerning this case, belief of possible danger for personal safety and safety of those who live with the victim, and fear privacy would be invaded due to the high profile nature of the case. None of the victims checked the box indicating receipt of threats. Twelve of the thirteen checked the box next to fear of invasion of privacy, two checked the box next to belief of possible danger, and two wrote comments simply indicating they were “scared” or “afraid.”
 

 Attached to the People’s memorandum, a deputy district attorney filed a declaration stating he had offered petitioner’s counsel “the opportunity to be called by each victim over the telephone at a prearranged time and date, the opportunity to meet each victim at the D.A.’s Office, and even the opportunity to meet each victim at his office.” (Italics omitted.) With regard to the final offer, petitioner’s counsel had been advised that each victim would be accompanied to his office by a prosecutor’s investigating officer but that counsel would have the opportunity to meet with each victim alone. The
 
 *1331
 
 declaration indicated petitioner’s counsel had “rejected each of the above alternatives.”
 

 The People argued to the superior court that “[f]or those victims who do not wish to be contacted by the defense or to have their names and addresses revealed, it is the People’s position that the defendant has no right to that information.” On the other hand, counsel for petitioner argued that he and his representatives should be able to talk to victims and witnesses “independently of any police officer or district attorney” and to “have unchanelled access to those witnesses so [he] could send [his] investigator out to meet and confer with them . . . .”
 

 The superior court held two hearings on petitioner’s motion to compel discovery. At the first hearing, the court acknowledged the victims’ “character or reputation” might be at issue in this case and that the
 
 Montez
 
 case
 
 (Montez
 
 v.
 
 Superior Court
 
 (1992) 5 Cal.App.4th 763 [7 Cal.Rptr.2d 76]), which dealt with gang involvement and gang threats to potential witnesses, “does not address the issue before this court.” Noting this is “an extremely troublesome case” and there is “no
 
 law at the present time
 
 that. . .
 
 applies good cause to this particular
 
 situation,” the court stated its belief that “the law requires that I order these disclosures,” namely the “names, addresses, phone numbers, and business addresses of the victims . . . .” (Italics added.) The court commented that “many of these victims will refuse in their entirety to speak or be interviewed or have any contact with defense,” that “the defense will not gain by their disclosure in any meaningful sense,” and that “what I’m doing is subjecting these victims to further embarrassment, impropriety, for no substantial gain on the part of the defendant by way of appropriate effective confrontation and cross-examination.” It then suggested a “compromise” order in which the court would “convene a formal hearing” at which the victims would come to court, listen to presentations by both counsel and the court, and then indicate whether they wished to be interviewed or not.
 

 At the second hearing on September 19, 1996, the Office of the Public Defender, which is representing petitioner, announced that it had reviewed the suggested compromise and found it “not workable.” The superior court then made an order that the prosecution turn over the victims’ names and addresses to the defense. However, without a specific request by the prosecution, the court also ordered that neither defense counsel “nor anyone acting in [his] direction or employ contact these victims for purposes of obtaining any further statements from them or investigation by virtue of contact with them.” After so restricting contact with the victims, the court indicated the defense was “free to correspond” with the victims “by whatever written means” it chose and that either the district attorney or the court would “forward any correspondence to these victims.”
 

 
 *1332
 
 By petition for a writ of mandate petitioner asks this court to enforce his right to contact the victims during pretrial discovery.
 
 [3]
 

 Discussion
 

 In this case, the superior court prohibited all representatives of petitioner from directly contacting petitioner’s alleged victims to protect them from “embarrassment,” “adverse publicity,” or a violation of “their privacy . . . due to the high profile nature of [a] case” based upon the victims’ statements that they wished not to have “any contact” by the defense attorney’s “office or any investigator for purposes of an interview.” Petitioner contends none of the trial court’s stated grounds for restricting defense contact with the victims warrant the imposed restriction. The People attempt to save the superior court’s restrictive discovery order on a ground other than those set forth by the superior court, namely that the order was an appropriate exercise of discretion under section 1054, subdivision (d) to “prevent harassment.”
 

 “The right of a criminal defendant to present a defense and witnesses on his or her behalf is a fundamental element of due process guaranteed under the Fourteenth Amendment to the United States Constitution [citation]”
 
 (People
 
 v.
 
 Schroeder
 
 (1991) 227 Cal.App.3d 784, 787 [278 Cal.Rptr. 237]), and a judge, as well as a prosecutor, can improperly interfere with an accused’s right to a fair trial.
 
 (Id.,
 
 at p. 788.)
 

 A criminal defendant does not have a fundamental due process right to pretrial interviews or depositions.
 
 (People
 
 v.
 
 Municipal Court
 
 (Runyan) (1978) 20 Cal.3d 523, 530-531 [143 Cal.Rptr. 609, 574 P.2d 425, 2 A.L.R.4th 681].) However, a defendant does have a right to the names and addresses of prosecution witnesses and a right to have an opportunity to interview those witnesses if they are willing to be interviewed. (See, e.g.,
 
 Clark
 
 v.
 
 Superior Court
 
 (1961) 190 Cal.App.2d 739, 742-743 [12 Cal.Rptr. 191];
 
 People
 
 v.
 
 Lopez
 
 (1963) 60 Cal.2d 223, 246-247 [32 Cal.Rptr. 424, 384 P.2d 16].) “A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined.”
 
 (Gregory
 
 v.
 
 United States
 
 (D.C. Cir. 1966) 369 F.2d 185, 188 [125 App.D.C. 140].) “As a general rule, a witness belongs neither to the government nor to the defense. Both sides have the
 
 *1333
 
 right to interview witnesses before trial. [Citations.] Exceptions to this rule are justifiable only under the ‘clearest and most compelling circumstances’. [Citation.] [H Where there is no overriding interest in security, the government has no right to interfere with defense access to witnesses.”
 
 (United States
 
 v.
 
 Cook
 
 (9th Cir. 1979) 608 F.2d 1175, 1180 [54 A.L.R.Fed. 661], fn. omitted.) Therefore, as a general rule, “[a] lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party.” (Canon 39 of the ABA Canons of Professional Ethics (1955); see also Canon 10 of the Code of Trial Conduct of the American College of Trial Lawyers (1972);
 
 Gregory
 
 v.
 
 United States, supra,
 
 369 F.2d 185, 188;
 
 United States
 
 v.
 
 Vole
 
 (7th Cir. 1970) 435 F.2d 774.) Generally, “[a] defendant is entitled to have access to any prospective witness although such a right of access may not lead to an actual interview.”
 
 (United States
 
 v.
 
 Scott
 
 (6th Cir. 1975) 518 F.2d 261, 268, italics omitted.) “[I]t [is] better procedure [for] the trial court [to] permit[] the attorneys for the defense to hear directly from the witness . . . whether he would be willing to talk to the defense attorneys, either alone or in the presence of his attorney.”
 
 (United States
 
 v.
 
 Long
 
 (8th Cir. 1971) 449 F.2d 288, 296; see also
 
 United States
 
 v.
 
 Walton
 
 (4th Cir. 1979) 602 F.2d 1176, 1180.) “Most victims are reluctant to discuss a case with defense counsel. To obtain an interview [the defense] must impress the victim with the need for fairness.” (Bailey & Rothblatt, Investigation and Preparation of Criminal Cases (2d ed. 1985) § 8.16, p. 171.)
 

 The parties before us agree the superior court’s challenged order preventing defense counsel from directly contacting the victims is a restriction on the disclosure of the names and addresses of the victims and that good cause must be shown to so restrict defense access to those prospective witnesses. They also correctly concede the due process clause of the state and federal Constitutions and our state criminal discovery statutes (§§ 1054-1054.7) govern access to prospective witnesses and any exception to such access. Sections 1054 through 1054.7, which were adopted by initiative (Prop. 115) at the June 5, 1990, primary election and became operative June 6, 1990, apply to this case.
 
 (Tapia
 
 v.
 
 Superior Court
 
 (1991) 53 Cal.3d 282, 300 [279 Cal.Rptr. 592, 807 P.2d 434].)
 

 In order to facilitate our analysis of the superior court’s restrictive discovery order, we set forth the relevant portions of the criminal discovery statutes.
 

 Section 1054.1 provides, in relevant part, that “[t]he prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting
 
 *1334
 
 attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [f] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.”
 

 Section 1054.7, provides, in relevant part, that “[t]he disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred. . . . ‘Good cause’ is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement.”
 

 Section 1054.7 provides the sole statutory exception to section 1054.1. However, in light of the People’s argument that good cause can be based upon subdivision (d) of section 1054, we set forth that section as well. Section 1054 provides that “[t]his chapter shall be interpreted to give effect to all of the following purposes: [*fl] (a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery. [<]□ (b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested. [T (c) To save court time in trial and avoid the necessity for frequent interruptions and postponements. [*]□ (d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings. [*]D (e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States.”
 

 As noted above, the superior court ordered the prosecutor to disclose the names and addresses of the victims to the defense but then restricted that disclosure by ordering that, since sealed declarations of the victims “indicate that they object to any contact by your [defense counsel’s] office or any investigator for purposes of an interview, I am specifically directing that neither you [defense counsel] nor anyone acting in your direction or employ contact these victims for purposes of obtaining any further statements from them or investigation by virtue of contact with them.”
 

 Petitioner contends his trial attorney has an affirmative obligation to investigate the facts of his case, that this obligation includes directly contacting the alleged victims in an effort to seek interviews with them, and that the challenged restrictive discovery order which prohibits the defense from directly contacting the alleged victims impinges on his rights to confrontation, a fair trial, and effective assistance of counsel. He contends the statutory considerations which theoretically could restrict such contact are inapplicable here where there is no evidence of harassment, threats, or
 
 *1335
 
 danger to the safety of the victims within the meaning of section 1054.7. He also contends the alleged victims’ right to privacy cannot provide justification for the imposed restriction.
 

 In opposition, the People argue that “in light of the totality of circumstances and of the victims’ express wishes, the trial court acted within its discretion when it attempted to preserve whatever little privacy, peace of mind, and sense of security each victim has left after her assault.” The People concede the defense is usually entitled, as part of the right to obtain the names and addresses of potential witnesses, to directly contact a victim as a part of pretrial investigation in a criminal prosecution and that “a trial court is not legally obligated to prohibit contact solely upon receipt of . . . declarations” from victims who express a desire “not to be contacted.” Instead, they suggest that such declarations are factors for the court to consider, along with “the nature of the offenses, the seriousness of the offenses, the contested issues at trial, the publicity attendant to the case, the good faith of parties, alternative offers of access to victims and witnesses, and heretofore compliance or lack thereof with discovery obligations.”
 

 While all of the above factors could conceivably become relevant in fashioning a substitute for direct contact, we conclude the trial court cannot consider fashioning such an alternative discovery process unless there has been a showing of sufficient danger of harassment, threats or harm to the victims to justify a prohibition against the defense directly contacting the victims. In so holding, we rely upon the statutory good cause exception set forth in section 1054.7 and the reasoning in those cases which have balanced the right of a defendant to pretrial disclosure of the names and addresses of witnesses against the need to protect witnesses from danger of threats or harm. We also rely upon those cases which have recognized that a defendant’s due process right to access to witnesses cannot be interfered with in the absence of proven compelling circumstances, such as an overriding interest in security. (See, e.g.,
 
 United States
 
 v.
 
 Cook, supra,
 
 608 F.2d at p. 1180;
 
 State
 
 v.
 
 Orona
 
 (1979) 92 N.M. 450 [589 P.2d 1041, 1043].) We agree with petitioner that the limitation on discovery placed upon him by the superior court could significantly impair defense efforts to prepare for trial. When, as here, there is no showing of any danger of harassment, threats, or harm to the victims, a prohibition against directly contacting the victims cannot be justified.
 

 1.
 
 Embarrassment
 

 One of the stated reasons the superior court prohibited the defense from directly contacting the victims was to afford the victims protection from “embarrassment.”
 

 
 *1336
 
 In
 
 Davis
 
 v.
 
 Alaska
 
 (1974) 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347], the majority reversed a conviction in which the defendant was precluded from examining a prosecution witness about his status as a juvenile probationer at the time of the offense and the time of the trial. The United States Supreme Court found the permitted cross-examination insufficiently effective, and that “[w]hatever temporary embarrassment might result to [the witness] or his family by disclosure ... is outweighed by petitioner’s right to probe into the influence of possible bias in the testimony of a crucial identification witness.”
 
 (Id.,
 
 at p. 319 [94 S.Ct. at p. 1112].) Analogously, the victims’ alleged privacy right to avoid embarrassment in this case “must fall before the right of petitioner to seek out the truth in the process of defending himself.”
 
 (Id.,
 
 at p. 320 [94 S.Ct. at p. 1112].) We therefore conclude that whatever embarrassment might result from the defense directly contacting the victims is outweighed by petitioner’s right to pretrial discovery, which includes discovery of the names and address of the victims and the right to directly contact those victims to request pretrial interviews as part of the defense investigation.
 

 2.
 
 Threats or Possible Danger to the Safety of the Victims
 

 The judge who ruled on petitioner’s discovery motions recognized that there was no real issue of threats or danger to the safety of victims in this case and that
 
 Montez
 
 v.
 
 Superior Court, supra, 5
 
 Cal.App.4th 763 [7 Cal.Rptr.2d 76], the sole case relied upon by the People below, was inapplicable.
 

 In
 
 Montez,
 
 the prosecution demonstrated a danger of threats or harm to eyewitnesses to a murder. Two of the defendants were gang members, and the witnesses felt intimidated at the preliminary examination. There had been previous harassment of the witnesses by defendants’ gang associates, and the witness feared “ ‘these people might come back.’ ” (5 Cal.App.4th at p. 771.) The court found “the prosecution [had] made a showing of sufficient danger of threats or harm to the witnesses”
 
 (id.,
 
 at p. 764) and that disclosure could be deferred, “particularly . . . given the . . . allegations concerning the defendants’ affiliations with violent criminal gangs.”
 
 (Id.
 
 at p. 770.)
 

 In petitioner’s case, on the other hand, although several of the victims indicated in their declarations that they were afraid, there is no evidence of threats, danger to the victims, inappropriate attempts to contact the victims, harassment or gang affiliation. No victim has suggested that she has received threats or has been harassed since the offenses took place. Petitioner is in custody, and neither he, nor anyone on his behalf, has made any effort to contact the victims in this case. Because the prosecution provided no evidence of potential witness danger, section 1054.7 cannot provide the basis for the superior court’s restrictive discovery order in this case.
 

 
 *1337
 
 3.
 
 Harassment
 

 The People argue that “[a]s the trial court was expressly empowered by Penal Code section 1054(d) to regulate discovery in such a way as to ‘protect victims and witnesses from . . . harassment,’ the trial court did not abuse its discretion in light of the totality of the circumstances in this case.” Their argument overlooks the record before us. In making its order prohibiting the defense from directly contacting the victims, the superior court excluded harassment as a basis for its ruling. The court noted its belief that its order to disclose the names and addresses of the victims would enable the petitioner to protect his rights of confrontation “but at the same time [would] protect[] what is before me as the clear protection afforded these victims from further contact, embarrassment,
 
 or—I’m not going to suggest harassment,
 
 but [prohibition against direct contact with the victims] will be the order of the court.” The People’s conclusory claim that direct contact would subject the victims to harassment is not supported by the record and cannot provide a justification for the court’s restrictive discovery order.
 
 [4]
 

 4.
 
 Right to Privacy
 

 The superior court indicated its ruling prohibiting the defense from directly contacting the victims was made in an effort to “balance the right of the defendant to [a] fair and impartial trial” against “the clear right of these victims not to be required to in any way be interviewed or further [have] their privacy invaded.”
 

 In this court, the People argue that “in light of the totality of circumstances and of the victims’ express wishes, the trial court acted within its discretion when it attempted to preserve whatever little privacy, peace of mind, and sense of security each victim has left after her assault.”
 
 [5]
 

 While a number of statutes safeguard the right of an alleged sex offense victim to privacy, we conclude that none of those statutes relieve the
 
 *1338
 
 prosecution of its obligation to disclose identifying witness information to the defense or provide a basis for an order prohibiting the defense from directly contacting the victims during its pretrial investigation.
 

 For example, section 293 prevents members of law enforcement agencies, not the prosecution, from making public the name and address of a reported sex offense victim who requests anonymity, except to other authorized agencies; pursuant to section 1054, the public defender is an authorized agency.
 

 Section 293.5 permits the court to order a sex offense victim be identified as Jane or John Doe in court records and proceedings, “([e]xcept as provided in Chapter 10 (commencing with Section 1054)).” In addition, such an order must not unduly prejudice the prosecution or the defense. Neither of these statutes, nor any other, affects the discovery obligations of the prosecutor, or establishes a privacy exception to section 1054.1, subdivision (a).
 

 The victim of a sexual assault can protect his or her name and address from becoming a public record pursuant to section 293 by requesting the information be withheld pursuant to Government Code section 6254, subdivision (f)(2). Moreover, subdivisions (c) and (d) of section 293 preclude a law enforcement agency from releasing the name and address of a sexual assault victim to anyone except the prosecutor.
 

 Once a defendant has been charged in a criminal action with sexual assault crimes, he or she has the right to the benefit of the discovery provisions of section 1054.1 regarding the prosecution’s trial witnesses, notwithstanding the limitations on disclosure of information contained in sections 293 and 841.5. (See Pipes & Gagen, Cal. Criminal Discovery (1995) Disclosure by Prosecutor, § 3:16, pp. 128-129.) The names and addresses of sexual assault victims must be disclosed to the defendant in a criminal case regardless of other statutory provisions that protect sexual assault victims from unwanted publicity and, in the absence of a showing of good cause as defined in section 1054.7 or actual harassment as discussed in section 1054, subdivision (d), the defense cannot be prohibited from directly contacting those victims.
 

 Section 293.5 contains a specific exception for section 1054 et seq., indicating that a defendant in a criminal case is entitled to the discovery benefits of section 1054.1, despite the privacy considerations of section 293.5. We agree with petitioner that the Legislature apparently considered and rejected the rationale relied upon by the prosecution and the trial court in this case. We conclude the victims’ expressed wish to protect their right to
 
 *1339
 
 privacy cannot provide the basis for a superior court order to interfere with the defendant’s normally unrestricted right to contact prosecution witnesses.
 
 [6]
 

 Conclusion
 

 There was no evidence presented of harassment, threats, or danger to the safety of the victims sufficient to support the trial court’s exercise of its discretion in ruling that good cause barred the defense from directly contacting the victims. Given the absence of demonstrable good cause to impose a restriction on defense counsel’s access to the People’s prospective witnesses within the purview of the statutory exceptions to discovery set forth in sections 1054 et seq., we conclude the trial court’s order restricting the defense from directly contacting the victims in this case must be vacated.
 

 Disposition
 

 Let a writ of mandate issue directing the respondent court to vacate its previous order prohibiting the petitioner’s defense counsel or agents from directly contacting the victims in this case. The previously granted stay is dissolved.
 

 Bamattre-Manoukian, J., and Mihara, J., concurred.
 

 [1]
 

 Petitioner’s concomitant request that we affirm the superior court’s order that the victims’ names and addresses be disclosed has been rendered moot by the People’s disclosure of that information.
 

 [2]
 

 All further statutory references are to the Penal Code unless otherwise specified.
 

 [3]
 

 A writ of mandate is the appropriate procedure to enforce such a discovery right. (See
 
 Hill
 
 v.
 
 Superior Court
 
 (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820];
 
 Joe Z.
 
 v.
 
 Superior Court
 
 (1970) 3 Cal.3d 797 [91 Cal.Rptr. 594, 478 P.2d 26]; see generally, Appeals and Writs in Criminal Cases (Cont.Ed.Bar 1982) § 2.50, pp. 239-242.)
 

 [4]
 

 We note that a victim cannot be compelled to talk to defense investigators or to submit to an interview (see
 
 Walker
 
 v.
 
 Superior Court
 
 (1957) 155 Cal.App.2d 134, 139-140 [317 P.2d 130]), and that, once a victim has been contacted and clearly has refused to be interviewed by the defense, continued unwanted contact could conceivably justify restrictive orders. Since the victim has an absolute right not to be interviewed, we reject petitioner’s request that we “devise some means of encouraging, affirmatively, the victims in this case to grant interviews to the defense.”
 

 [5]
 

 Throughout their opposition to the petition, the People concede the victims’ expressed fear of invasion of privacy, as well as their fear of public exposure, fear of being embarrassed by the defense, and fear of harassment by the defense, may not be “grounded in reality” and note that “while some of these fears may be more imagined than real, these fears are natural and common.”
 

 [6]
 

 Because we agree with petitioner that he is entitled to identifying information about the victims and that he is entitled to contact the victims, we need not address his concern that he has waived any challenge to the legal sufficiency of the purported declarations of the alleged victims of the charged offenses.